In re Cathryn R. COVENEY, Debtor.

Cathryn R. COVENEY, Plaintiff,

v.

COSTEP SERVICING AGENT, Educational Financing Group and Student Loan Servicing Center and Texas Guaranteed Student Loan Corporation, Defendants.

Bankruptcy No. 94–52211–RBK.
Adv. No. 94–5169–RBK.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 2, 1996.

William R. Davis, Jr., San Antonio, Texas, for Plaintiff, Cathryn R. Coveney.

Doug Ray, Austin, Texas, for Defendant, Texas Guaranteed Student Loan Corporation.

## OPINION

RONALD B. KING, Bankruptcy Judge.

This adversary proceeding concerns the dischargeability of student loans based upon alleged undue hardship. Cathryn R. Coveney (the "Debtor") obtained student loans to assist her in pursuing a college education. The Texas Guaranteed Student Loan Corporation ("TGSLC") guaranteed these loans. The Debtor defaulted on her student loans and TGSLC, pursuant to its guaranty, purchased the notes from the lenders. The Debtor is indebted to TGSLC in the total amount of $19,299.90 as of January, 1995, with interest continuing to accrue.

The Debtor successfully acquired a Bachelor's degree in biology and partially completed a Master's degree. The Debtor initially made payments on her loans, but subsequently ceased making payments due to the fact that she lost her job and became pregnant. Also, she was having problems with an abusive, alcoholic husband. The Debtor's "best job" in Houston, Texas paid $21,000.00 per year with a net monthly income of $1,300.00, which the Debtor claims is approximately $500.00 per month less than her monthly expenses would be if she and her child still lived in Houston.

The Debtor has no health problems. She moved to Crystal City, Texas, however, to care for her mother, who is effectively confined to a chair because of a hip replacement, bad knees, and a back condition. The Debtor claims that her mother receives $900.00 monthly in Social Security benefits. Her mother pays the rent, utilities, and allows the Debtor the use of a car. The Debtor has not found employment in Crystal City, although she claims she has been actively looking. She has not looked outside Crystal City for employment since 1993. The Debtor acknowledges that her mother is not a legal dependent, but insists that her mother is physically dependent on her. The Debtor's three and one half year old child receives $231.00 monthly from Social Security, but no child support is paid by the child's father.

The Debtor argues that the *Brunner* standard, which was accepted by this Court in *Stebbins–Hopf,* has been met because the Debtor's situation is likely to remain the same and the Debtor has made a good faith effort to repay the loans. TGSLC argues that the *Brunner* standard has not been met because the Debtor's moral obligation to her mother does not excuse her legal obligation to repay her debt. Further, TGSLC argues that there is no evidence of a present inability to work, and there may be evidence of bad faith because the Debtor has not looked outside of Crystal City for a job in two years.

## DISCUSSION

■ A discharge of the Debtor's student loans is not warranted under the hardship exception of section 523(a)(8)(B) of the Bankruptcy Code if the Debtor does not satisfy the *Brunner* test. *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993); *Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395, 396 (2d Cir.1987); *Stebbins–Hopf v. Texas Guar. Student Loan Corp. (In re Stebbins–Hopf),* 176 B.R. 784, 786–787 (Bankr. W.D.Tex.1994).

Section 523(a)(8)(B) of the Bankruptcy Code provides an exception to a debtor's discharge:

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any

program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—

. . . .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. . . .

11 U.S.C. § 523(a)(8) (Supp. V 1993). Because the Bankruptcy Code does not define "undue hardship," bankruptcy courts have taken different approaches in actions to determine the dischargeability of student loans. A review of the case law demonstrates that the Fifth Circuit has not adopted an undue hardship standard, but the trend is toward the adoption of the standard set forth by the Second Circuit in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987):

"[U]ndue hardship" requir[es] a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. *See Roberson*, 999 F.2d at 1135; *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359–60 (6th Cir.1994) *cert. denied*, —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995); *Ammirati v. Nellie Mae, Inc. (In re Ammirati)*, 187 B.R. 902, 905–907 (D.S.C.1995); *Cobb v. University of Toledo (In re Cobb)*, 188 B.R. 22, 23–24 (Bankr.N.D.Ohio 1995); *Stebbins–Hopf*, 176 B.R. at 786.[1]

The first prong of the *Brunner* test requires an examination of the debtor's current income and expenses to determine if repayment of the loan would cause the debtor to fall below a minimal standard of living for the debtor and her dependents. *Stebbins–Hopf*, 176 B.R. at 786. This is a threshold matter which must be met before the court examines the next two prongs. *Id.* Because information involving the debtor's current financial status is readily available, the debtor must, at the very least, "[demonstrate] that . . . [s]he is unable to earn sufficient income to maintain [her] self and [her] dependents and to repay the educational debt." *Roberson*, 999 F.2d at 1135 (quoting COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, REPORT, H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. II, at 140 n. 15 (1973)).

The second prong of this test requires that the debtor show that her strained financial condition, demonstrated by the application of the first prong of the test, will continue for a significant portion of the repayment period. *Stebbins–Hopf*, 176 B.R. at 786. This part of the test is consistent with Congress's intention that there be "undue hardship" and not simply "ordinary hardship." *Mathews v. Higher Educ. Assistance Found. (In re Mathews)*, 166 B.R. 940, 943 (Bankr.D.Kan.1994). "[T]he dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Roberson*, 999 F.2d at 1136 (quoting *Briscoe v. Bank of New York (In re Briscoe)*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981)). Therefore, the court must determine whether there is a current inability to pay and, additionally, whether circumstances strongly suggest the debtor will be unable to repay over an ex-

---

1. Both Plaintiff and Defendant agree that the *Brunner* standard is the applicable law. Therefore, it is not necessary for this Court to discuss the three-part test articulated in *Higher Educ. Assistance Agency v. Johnson (In re Johnson)*, 5 Bankr.Ct.Dec. 532 (Bankr.E.D.Pa.1979). This Court rejected the *Johnson* standard in *In re Stebbins–Hopf*, 176 B.R. 784 (Bankr.W.D.Tex. 1994). Further, this Court has declined to use the case-by-case factor analysis approach. *See*

*Coleman v. Higher Educ. Assistance Found. (In re Coleman)*, 98 B.R. 443 (Bankr.S.D.Ind.1989) for a typical list of factors considered by courts which use the case-by-case approach. This approach would give courts too much discretion which could undermine Congress's intention to have a heightened standard for student loan discharge. *Mathews v. Higher Educ. Assistance Found. (In re Mathews)*, 166 B.R. 940, 943 (Bankr.D.Kan.1994).

tended period of time. *Id.* (citing *Brunner*, 831 F.2d at 396).

■ After the debtor satisfies the first two prongs of the test, she must meet the final prong—the debtor must show that she made a good faith effort to repay the loan. *Stebbins–Hopf*, 176 B.R. at 786. Because educational loans are different from other loans in that they are without security and without co-signers, the student assumes an obligation to make a good faith effort to repay those loans. The court should consider whether the debtor has made an effort to maximize her income and minimize her expenses. Therefore, a debtor may not willfully or negligently cause her own default. *Id.* (citing *Roberson*, 999 F.2d at 1136).

### 1. Can the Debtor maintain, based on current income and expenses, a minimal standard of living for herself and her dependents?

■ The Debtor has one dependent, her three and one half year old daughter. The Debtor admits that her mother is not a legal dependent. At present, the Debtor receives $50 to $200 per month for typing for churches in Crystal City. Her child receives $231 a month for Social Security. Her mother pays for the Debtor's rent and utilities. Despite this fact, the Debtor's expenses probably exceed her income at present.[2] Therefore, the Debtor satisfies the threshold prong of the test.

### 2. Is the Debtor's financial condition only temporary or will it continue over the substantial part of the repayment period?

■ In *Stebbins–Hopf*, the Debtor had some health problems and never acquired her degree, but she was still denied a discharge of her student loans. It was not established that the Debtor could not get a raise or promotion in the future, and there were no real barriers preventing the Debtor's employment. *Stebbins–Hopf*, 176 B.R. at 788. Her situation was not so severe that there was a "certainty of hopelessness."[3] In this case, the Debtor has no health problems and did receive a Bachelor's degree in biology. She could find a job as a teacher or a lab technician. Her mother is not the Debtor's legal dependent and, therefore, should not hinder the Debtor from seeking employment. The Debtor claims that if she worked in Houston, her income would exceed her expenses. This Court can agree that this is a hardship, but not an "undue hardship." Initially, her salary may be low, but an able-bodied person with a college degree should be able to work and pay her debts. As stated in *Roberson*, the Debtor is not entitled to an undue-hardship discharge by virtue of selecting an education that failed to return economic rewards. *Roberson*, 999 F.2d at 1137. Therefore, the second prong of the test is not met, and the Debtor has failed to establish that her circumstances warrant a hardship discharge pursuant to section 523(a)(8)(B) of the Bankruptcy Code.

**2.** It is arguable that the Debtor can maintain a minimal standard of living for herself and her dependents because of the fact that her mother effectively reduces the Debtor's expenses by taking care of the rent and utilities and allowing the Debtor to use her car. If the Debtor did not live with and take care of her mother, however, the Debtor would not receive these financial benefits.

**3.** Cases where the debtor met the second prong of the *Brunner* test exhibited a combination of low income and exceptional circumstances so severe that the debtor would not have been able to repay the loans. *Mathews*, 166 B.R. at 945 (citing *Berthiaume v. Pennsylvania Higher Educ. Assistance Auth. (In re Berthiaume)*, 138 B.R. 516 (Bankr.W.D.Ky.1992) (debtor who was not able to secure permanent employment because she was suffering from a congenital heart defect, dyslexia, and clinical depression was entitled to a hardship discharge); *Shoberg v. Minnesota Higher Educ. Coordinating Council (In re Shoberg)*, 41 B.R. 684 (Bankr.D.Minn.1984) (debtor with child support obligation and medical condition coupled with few job skills who had little prospect of full-time employment at a decent wage was entitled to hardship discharge)); *Roberson*, 999 F.2d at 1137 (citing *Financial Collection Agencies v. Norman (In re Norman)*, 25 B.R. 545, 550 (Bankr.S.D.Cal.1982) (psychiatric problems prevented work); *Siebert v. United States Government Department of Health Educ. and Welfare (In re Siebert)*, 10 B.R. 704, 705 (Bankr.S.D.Ohio 1981) (lack of usable job skills and severely limited education); *Clay v. Westmar College (In re Clay)*, 12 B.R. 251, 254 (Bankr.N.D.Iowa 1981) (required to fully support dependents)).

### 3. Has the Debtor made good faith efforts to repay the loans?

■ If the Court had to apply this prong of the test, the Debtor would fail to meet her burden. In order to satisfy this final part of the test, the Debtor must show that she did not willfully or negligently cause her own default, and that she made a good faith effort to repay. *Roberson,* 999 F.2d at 1136. The Debtor, in this case, stopped making payments when she lost her job. The Debtor admits that she has not looked for employment outside of Crystal City in two years. The Debtor consciously chose to care for her mother and not to look for a job outside of Crystal City. Rather than circumstances beyond her control being the cause of the Debtor's default, the Debtor herself is responsible for her financial hardship. The Court can recognize the Debtor's unselfish efforts to care for her mother, but finds that her moral obligation to a family member, who is not a dependent, does not take priority over her legal obligation to repay her educational loans. *Stebbins–Hopf,* 176 B.R. at 788.

### CONCLUSION

The Debtor has failed to meet the *Brunner* test. She has a college degree and no health problems. There is no "certainty of hopelessness," and failure to repay the loans is due in large part to choices which the Debtor voluntarily made. Accordingly, the Debtor is not entitled to a hardship discharge pursuant to section 523(a)(8)(B) of the Bankruptcy Code.

TGSLC filed a counterclaim for recovery on the promissory notes, which Plaintiff admits are in default. TGSLC is entitled to judgment on its counterclaim for the unpaid principal and interest due and owing as of the date of entry of the judgment.

This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Fed.R.Bankr.P. 7052. A separate judgment will be rendered.